today, United States v. Vickers. Ms. Mitchell. May it please the court. Amy Mitchell for the court. The first issue is whether the district court and in turn, this court has jurisdiction in this case. Under the operative decisions in Weiss and Clay, the answer is no. For our purposes, Clay held that the movement in a successive section 2255 motion bears the burden of establishing the district court's jurisdiction by showing that it is more likely than not that his claim relies on a new and previously unavailable rule of constitutional law. Here, that means that Mr. Vickers must prove that it is more likely than not that when the district court sentenced him in July of 2007, it relied on ACCA's residual clause to determine that his Texas murder conviction was a violent felony. So, let me, I don't want to interrupt your train of thought and you're welcome to present your detailed argument, but assuming that you're right, that we have no jurisdiction, how should our order read? What should it say about what, if anything happens to this case thereafter, if we dismiss for want of appellate jurisdiction? The court should vacate the district court's judgments, the prior judgments in the case in the 2255 and also the second sentencing judgment, and remand with instructions to dismiss Mr. Vickers in the 2255 and to reinstate his initial ACCA sentence. Well, okay, so if we, this may be a little bit technical or in the weeds, but if we have no jurisdiction, then how do we have jurisdiction to vacate? I understand we would have jurisdiction certainly to say whatever we want to say about what happens, but do we have the power to vacate if we have no jurisdiction? I think the court would have to have that power, otherwise we're stuck with the previous decision, which was based on no jurisdiction. So, the district court didn't have jurisdiction, therefore this court doesn't have jurisdiction. I mean, we might be able to, I'm not sure, I'm just thinking out loud here, I mean, we might have jurisdiction to direct the district court to do something, whether it would be vacate or otherwise, but I just raised a question about whether we can take an action on a district court judgment or order if we have no jurisdiction. I think directing the district court to do something would essentially accomplish what would need to be done here, which is that the district court would then dismiss for lack of jurisdiction. We could direct the district court to confirm its own jurisdiction to assess whether there are jurisdictional facts, to apply Clay and Weiss, couldn't we? Yes. That would also be an alternative, that the court could return this case to the district court to consider those issues. The habeas court, it was the sentencing court, you'd think the district court would know. Applying the likely test would. Now, this is an issue that's gone unnoticed by the government, by the district court, by us in 2020, by the Supreme Court. Is that correct? It is. Now, when the district court considered this case, it was before Weiss or Clay had been decided. But when you argued to us that Reyes-Contreras should require reversal, both cases not only have been decided, Weiss cited them. I believe Weiss had been, but Clay had not been. I mean, Clay was like maybe two weeks after my initial briefing. But we cited both in the opinion. Yes. And we didn't dismiss ourselves. Then it's in front of the Supreme Court, and their remand to us is to apply Borden. How, is there any argument, I don't know the answer to this, but is there any argument that they only had jurisdiction to remand for us to apply Borden by assuming jurisdiction? Are we free, given the law of the case, to essentially say that the Supreme Court impermissibly assumed jurisdiction? I'm not sure of the answer to that question either, but I would say this. I mean, this court always has an obligation to look at its jurisdiction and decide whether it has the authority under the statute to review the case. Well, let me ask another question you may not have an answer to, but if we rule ourselves directly or direct the district court to confirm jurisdiction, will the government defend, because there are sort of layers of splits out there on this issue, whether it's jurisdictional or whether it's claim processing, is it likely, is it just may have sentenced under the residual clause, will the government defend the position you're defending to us? I can't tell you with certainty what the Solicitor General's Office will do in this particular case. I can tell you what they have done in the other cases that this court has either affirmed where the district court found no jurisdiction or where this court actually reversed based on the lack of jurisdiction. And I looked at about seven or eight cases that came after Clay and including Clay, and what the Solicitor General's Office had done in those is either file no response to the petition for cert or file a response in opposition. So I think it's, based on past history, I think the department would defend this case on . . . It's likely the predicate was based on the residual clause. Is that correct? At the time of sentencing, is that, am I phrasing it right? That at the time of sentencing, Mr. Vickers has the burden of proving that at the time of sentencing, the sentencing court relied more likely than not. Okay. The Eleventh Circuit has tightened it up a little, right? The Eleventh Circuit is, it's not just more likely than not. It's the burden on the movement to show determinatively it could not have been. Are you familiar with the Eleventh Circuit line of authority? No, I'm not. Okay. Here the case law says it's more likely than not. And the court looks to two places to decide that. The first is the sentencing record and the second is the legal landscape at the time of sentencing. Here the sentencing record was silent. Mr. Vickers didn't challenge that his murder conviction counted as an act of predicate back in 2007. And the district court didn't indicate one way or the other whether it believed it was an elements clause offense or residual clause offense. The district court did accept the government's shepherd documents, and those documents showed that Mr. Vickers was, in fact, convicted of intentional murder. The PSR was likewise silent, probably because the issue was not raised. It didn't say one way or the other whether it was residual clause or an elements clause offense. It seems sort of absurd to say murder isn't violent. On the other hand, sometimes if the Supreme Court's created the whole categorical approach that's so counterfactual, at some point you have to just apply the law rigidly to get that impossibility back to the Supreme Court. I agree that it is absurd, that the idea that murder wouldn't qualify as a violent felony. I mean, the Supreme Court said in James that it was the quintessential violent felony. This court in the dissent in Calderon-Pena said exactly that, that it would be absurd for murder not to qualify as a forced clause offense. Before Reyes-Contreras, so at the time of sentencing in 2007, can you point to any Fifth Circuit case that would have said murder qualifies under the elements clause? No, but neither is there a case that says it qualified under the residual clause. There was no case saying anything about murder one way or the other until this court's earlier decision. So in 2007, it was the beginning of that line of cases of Vargas-Duran and Calderon-Pena. I thought that's the whole reason we went on bonk in Reyes-Contreras. We cleaned out that line of authority that wouldn't have said indirect force can't qualify. Correct. But in terms of what the sentencing court would have looked at in 2007, it would have been just the beginning of that line of cases. There wasn't anything applying that line of cases to even a causing death offense until 2015 when the court decided Garcia-Perez, I think. Counsel, let me ask you about two more recent cases. On page 5 of your February 23 letter, your recent letter, you referenced the Chavez case from the Southern District and Richardson, a Northern District case. And both of those are, I believe, within the last three years or so. How do those cases – I was unclear as to how those support your position regarding the probability of the residual clause application. I think those cases support our argument in this sense, that even then, even in 2014, 2015, 2017, in those later years, long after Vickers was sentenced, there's still this open question in the law. And where there is that uncertainty, Mr. Vickers can't meet his burden of proof. So I think that's why they're relevant to what the sentencing court may have been thinking in 2007. On remand from us, reversing because of Reyes-Contreras, the district court goes through the elements clause to say that, well, my Johnson error isn't harmless? Or goes through it to try to decide whether it was likely that that same judge had or hadn't relied on the force clause? What's your thought? I'm not sure I understand your question. Here, when it goes back down, the court applies Reyes-Contreras, correct? And then that's what the Supreme Court has flipped and says, now apply Borden. When the district court did that – am I correct on that sequence? The district court – I may be confusing myself. The district court hasn't done that at this point. So it – and Mr. Vickers is still – That's right. It went straight up from us. Yeah, yeah, yeah. Right? It went straight from here to the Supreme Court and then it's – we're back here again. It hasn't been back to the district court yet. You want to get to your – the brief argument was it's divisible. And you want me to shoot you a question on that? I'm happy to answer any question you may have. Do you have any case other than Lerma that after Mathis to decide whether we'd look at divisibility, you would look past the state court determination as to whether a jury was unanimous or not unanimous? There's also Garrett. And those construe the same Texas statute. Both of those were looking at, I guess, aggravated robbery and robbery. Contrary to what Mr. Vickers is saying, the government isn't asking the court to ignore Mathis. What we're saying is that there's Mathis, but there's also DeKalb. And Mathis didn't overrule DeKalb. And DeKalb directs the court to also look at the statutory language And what you have in this case with the Texas murder statute is it sets out three subdivisions that are, you know, or it's divided by a semicolon, so by punctuation and text it appears to be disjunctive. And they're also very different courses of conduct. They have different mens rea requirements. They require different behavior from the defendant. And sort of the flip side of that is that if we accept that the Texas courts, I mean, obviously those jury unanimity decisions are there, and it's the Texas Court of Criminal Appeals. And they say jury unanimity is not required between the subdivisions. But if you accept that, and then you also accept that the Texas courts are using the words in the same way, they're using them the same way that we use them here, murder only has one element, and that's causing death. And certainly the state has to prove more than just that to the jury. They have to prove something beyond this defendant caused this death. There has to be a mens rea requirement. There has to be some action taken to cause that death. And those are things that have to be proven to the jury, and that makes them elements under Mathis. But the jury can mix and match, right? They can mix and match. They don't have to be unanimous as to each subsection. Yes, they can, but the state still has to prove those elements to the jury. There has to be something more than just defendant caused victim's death that is proven to the jury, and that makes them elements under Mathis. I see I'm nearing the end of my time. Again, it's the government's position that the court does not have jurisdiction, that Mr. Vickers cannot meet his burden of proving that it was more likely than not that the sentencing court relied on the residual clause when it considered his prior murder conviction. And then alternatively, we would ask that the court find that a Texas murder statute is divisible, and because Mr. Vickers was convicted of intentional murder, his conviction is an elements clause offense, and he should be resentenced under the ACCA. You've saved time for rebuttal, Ms. Mitchell. Mr. Wright? Thank you, Your Honor, and good morning. May it please the court. I have good news. There is no need for this court to try to untangle the jurisdictional Gordian knot that Judge Higginson has suggested would be presented by the government's 11th hour gatekeeping argument. Why? Because this court's decision in United States v. Lawrence Taylor forecloses that argument, and this panel is bound by Lawrence Taylor. This circuit strictly adheres to the rule of orderliness, what has been described as a kind of stare decisis on steroids, so that even if a judge or a court disagrees with the substance of a decision, it must follow the prior published panel decision. Lawrence Taylor, which is 873 F. 3rd 476, cited in our brief on the gatekeeping question, I think the court can just focus on two pages from that decision, 481 and 482. Here's what Lawrence Taylor says. First, there's nothing explicit in the sentencing record about which clause was relied on. Second, that the defendant raised no objection to considering the injury to a child predicate as a violent felony for purposes of the Armed Criminal Act. Third, unlike this case, the district court did exercise its authority at the gatekeeping stage to say the residual clause played no role at movement sentencing. The district court said that explicitly. So in this sense, it's like the court has already done what Judge Higginson and the government have suggested the district court here might do on remand. The court said no role at sentencing. And still, fourth, this court had not ruled at the time of sentencing directly on the question of whether or not injury to a child is a violent felony under the Armed Career Criminal Act. So this is as strong a case, stronger than this one for the government, but this court said Lawrence Taylor satisfies the more likely than not standard. Lawrence Taylor did not decide between the available standards of more likely than not or may have relied because Lawrence Taylor satisfied both. That case is the earliest published decision in this sequence, sets the parameters for what the court could later do in Wiesa and Clay and for what this court can do in Vickers. This court is bound by Lawrence Taylor, and Lawrence Taylor said the reason he can satisfy it is because precedent suggested that the third predicate, the air injury to a child, could only qualify under the residual clause. That was enough to meet the gatekeeping standard, and so there is no need to worry about whether this court exceeded the boundaries, be they jurisdictional or otherwise, in its previous decision or if the Supreme Court ignored the alleged lack of subject matter jurisdiction here. There is no need to do that. Moreover, we would contend that at most the substantive gatekeeping standard, whatever that is, that Lawrence Taylor, Wiesa, and Clay, that is at most a mandatory claims processing requirement, just like the substantive standard that governs the issuance of a certificate of appealability. Well, fortunately, we have guidance from the United States Supreme Court about the jurisdictionality of those requirements at the COA stage very similar. What the Supreme Court says is you have to do the gatekeeping step, in that case the issuance of the COA, by the district court or by the court of appeals. But that's the sole function of this barrier, and once that's done, we decide the case on the merits. We don't go back and continue to revisit this inquiry. That's also what the government believes. So I don't know what the Solicitor General's Office would do at the Supreme Court, but they would not defend the jurisdictionality of the substantive standards that may or may not govern a gatekeeping inquiry. That they have not done yet, unless they reverse their position, which, of course, they're free to do. But this is complex, but am I right? I think even if we accept that Taylor is the earliest, I think then you're suggesting Clay and Weiss were both wrong by enhancing the test, but Taylor is saying it's jurisdictional. You may dispute it. Aren't we committed in all our law to this being a gatekeeping jurisdictional or not? So here we get into an intra-Fifth Circuit sort of meta-precedent debate about whether the court is bound by issues that went under the radar, if you will, in previous litigation. Now, I know that at least two members of this panel have sat on a contentious en banc about that, which left it unresolved. So I would like to avoid that if I could, but I will say that when it was treated, in other words, the district court invoked it itself in Taylor, so whether or not it's jurisdictional or claims processing wouldn't matter. Weiss, there's no briefing on that distinction, claims processing versus jurisdictional. Clay is a pro se case. I don't think he said anything about that because it's very difficult, even for someone who practices post-conviction appellate law full time, to even master these distinctions. So the court has not done that, and the court, before dismissing this case on this 11th hour ground, it's inconsistent with what the government argued below, we should at least look carefully at whether or not it is truly jurisdictional in the non-waivable sense, in the court can raise it on its own authority sense. But if you don't agree with me about that, so you say it is jurisdictional, I say, again, good news. Lawrence Taylor avoids this entire debate for now because it sets the parameters for what the panel can do for the gatekeeping standard, regardless of whether or not it's jurisdictional. A standard of suggested or may have as opposed to likely? No, and I'm sorry, to answer more directly your question about whether those decisions are wrong. If we're looking at reasoning, if we're looking at dicta, it is very difficult to reconcile these three decisions. But let me give you my best chance of doing it where all three could survive at least another day. But it's not just three. We've doubled down on Clay. In unpublished cases, you have. And let me tell you whether or not those cases are consistent with Lawrence Taylor or not. I wish I could ask my law court right now. I thought there's been at least a published one since then. And there might have been. But again, let me give you my best way to keep these three decisions. What came after them, I dare not try. The unpublished cases, you voted against me, so I'm not going to defend those either. But in the published cases, Lawrence Taylor, we know what the third predicate is. No question about that. And we know at the time of sentencing if the court is applying the law that existed at that time, the time capsule or snapshot approach, we know what the court would have done. The court would have applied the residual clause. Same thing is true here. Now, would only have? Sure, could only have. What's the Fifth Circuit case at time of sentencing that foreclosed a forced clause predicate? In this case, it's Vargas Duran and Villegas Hernandez. But they dispute that. They're wrong, Your Honor. It is a matter of logical necessity. Now, I will say, a certain very prescient Fifth Circuit judge dissented in Calderon, Pena, recognized that the direction the court would later be going would be wrong. But that judge, Judge Smith, was then bound by this line of precedent until Reyes-Contreras overruled it. Now, people would say Reyes-Contreras was simply applying Supreme Court precedent. That Supreme Court precedent is Castleman. It's Voisin, which we know is sort of misapplied in Reyes-Contreras. We know that now, right? But these Supreme Court cases, long after sentencing. Even Curtis Johnson happened after Mr. Taylor's sentencing. All the district court had to go on was the rule, which was Villegas-Hernandez says, if it's poison, it's not force. It's not the use of force against someone. So, and when this court then was asked to apply the rule, while, I would say, while the case was on direct appeal, I could either 28J or tell you right now, in the case the court recognized threatening to kill someone was not a threat to use force against someone while the case was on direct appeal. In other words, under the snapshot, you can't get there. And the government argued that below. That's what I think is really important. The government said Villegas-Hernandez cemented the Fifth Circuit's erroneous distinction between indirect or poison and using force. In other words, the government's entire position in this case has been, please don't look at the law in 2007. Look at the law that we say exists today. So it is a change in their position to say, well, actually, the court very well might have said, poison is not force if it hurts someone. Poison is not force if it hurts somebody really, really badly. But if it goes ahead and kills them, then poison is force. That is a logical inconsistency. But, and I know we're benefiting from this disquisition. You say it's good news because the jurisdictional thicket is too dense. My worry is the pre-Reyes-Contreras world was too dense a thicket. Why wouldn't it be appropriate to just take the Supreme Court at its word that this is a remand to apply Borden, and now we know there should be jurisdictional inquiry, and let's let these arguments be made to the district court? Because both directions are complicated. Your Honor, a couple of things. If you're taking the Supreme Court at its word, the court should apply Borden to the case, recognize that the previous marriage decision has been unequivocally overruled. The basis for the decision has been overruled. Right, but in other Borden remands, we're sending them back down to the district court to really do that. Right, and what I'm suggesting here is that the district court is going to be bound by Lawrence Taylor the same way this panel is bound by Lawrence Taylor. Not only is it a waste of judicial resources to do that, but the strong suggestion, when this court vacates a decision and sends it back to the district court, is we need to do this again. I will also say, as you have suggested, Judge Higginson, just the label that Texas has applied to this crime, I would say it's an incredibly broad crime, much broader than you would apply that particular label. That one has a lot of force. I will not deny that when you hear the M word, you want to think violence. Okay, and so if I have to convince you, sort of as I said jokingly while traveling here, someone on the airport, I just have to convince them that murder is not violent and I win, it's a joke, right? But ignore the label as the categorical approach says. Look at the elements, what the state says the elements of this crime are. That does not require the use of force under current law, as Borden has made clear. And at the time, at the time of sentencing, Villegas-Hernandez controlled. No one's ever continued otherwise. Vargas-Duran controlled. But a lot of district courts were saying murder is a predicate under the elements clause. Now, if so, the government hasn't cited that decision. District courts. And we haven't, again, and we haven't found that decision. If we're talking about post-conviction cases, so Judge Englehart, you asked my friend about cases like Chavez and cases like Richardson, district court cases that come after Reyes-Contreras changed the law. Those are current law decisions. And they actually cited either the district court's opinion in Vickers, this very case, or they cited this court's opinion, erroneously reversing that decision on the merits. It is circular to say that, you know, the court has changed the law 20 years after the sentencing. Maybe not quite 20, right? And so, therefore, we can send that back in time. What we look at instead, if we could get in a time machine, what we find is that poison is not the use of force. And every time that question was put to this Court in a published or unpublished opinion, if something could be done by poison, it did not satisfy the elements clause. You didn't attack murder as a predicate on direct appeal, did you? We did not, Your Honor. Again, same as in Lawrence-Taylor. We did not attack it because it was a residual clause violent felony. Oh, I see. Okay. And so if you look at this Court's decision in Perez-Munoz v. Kisler, again, we didn't cite that below, that we had only five pages to deal with this very complex question, but it happened while the case was on direct appeal in this case. That was a 16b case. It was about injury to a child, which we know, even at the time of Mr. Vickers' conviction, could be a predicate for felony murder. So I love injury to a child because felony murder requires nothing more than a more serious result from injury to a child. What we knew was where the Court had applied the modified categorical approach, we now know erroneously, to narrow it to an intentional act of causing injury to a child. The Court said we can't apply 16a because there's ways to hurt a child that don't involve the use of force and mention poisons aside. But they said, ah, but 16b, the residual clause, that we can do. That we can apply. So, no, we wouldn't have come to you and argued that this is not an elements clause violent felony because the answer would have been whatever the mid-2000s Fifth Circuit version of duh is, right? There is no dispute, if we take our time machine to 2007 and 2008, that this doesn't satisfy the elements clause, duh, but it satisfies the residual clause under Fifth Circuit precedent. And you say the district court knew that? Sure, the district court knew that, absolutely. Because what did the district court do in 2018? In 2018, the district court, the whole fight in this case is under current law. Has it shifted? Has the law shifted? And the district court says, no, I'm sorry, I'm still stuck with these cases. In other words, Vegas Hernandez, we know what the district court did in 2018, relied on intervening authority, but it was intervening authority saying what? Saying the 2004 law is still the law. 2006 law is still the law. In a situation like this, this is why I would submit, we should be very careful before assigning jurisdictional significance to this inquiry that is extra textual, I mean, at best. I asked opposing counsel about Eleventh Circuit. Are you familiar with the Eleventh Circuit authority? It's a tighter, it's an even tighter restriction, right? If there's nothing in the sentencing record to say that the district court for sure did residual clause, you've got to look at the legal landscape, I think. I think it's your burden to say determinatively it wasn't. Are you familiar with that or not? I mean, it wouldn't surprise me. From some of the Eleventh Circuit decisions, I haven't heard that language, but you could characterize some of the ones that are discussed in Lawrence-Taylor as that way. I think that's wrong. I think it is not supported either by the text of any statute or precedent. It's certainly not what this Court has said, and it's inconsistent with Taylor, so that is an en banc level problem. But I can do that too. I can do that too because the Fifth Circuit said I hesitate to think about poison rather than disease or some other way that seems less forceful, right, because we all know now poison is wrong. But poison is such an easy thing to imagine. The rule was if you can do it with poison, it is not a use of force against the victim. That was the rule. Again, Judge Smith, you dissented against that and ultimately persuaded your colleagues to change Fifth Circuit law in light of Supreme Court precedent that came long after Mr. Vickers' sentencing. But having lost that battle at the en banc Court, I don't think the Court would have permitted a district court to say, you know what? Judge Jerry Smith was right, and I don't care what they say. I'm going to apply the Elements Clause here. You know, come heck or high water. And, of course, if the district court had done that and we had challenged it on appeal, what would have happened? The Court would have said it doesn't matter. It's harmless. It's a residual-clause violent felony. And I think that's what Lawrence-Taylor gets at, is saying, no, we didn't ask them to specify because it very plainly qualified as residual-clause violent felony. It very plainly could not qualify as an Elements Clause violent felony. So, effectively, what it would be asking us to do is to anticipate the ruling in Johnson, again, years and years and years later. We have to anticipate that and say, one day, one day, the part of this definition that the Court is plainly applying might be ruled unconstitutional. Never mind, the Supreme Court has rejected that. It might happen, and so let me get the district court on record to make clear that's what would— No. That is not required in any form, shape, or fashion. And this Court wouldn't announce it. On appeal, just like on 2255, my basic claim has to be the sentence is unlawful. That claim doesn't exist until Johnson— No circuit, nor ours. I mean, you've got a lot of understanding of this. Right now it's considering Texas murder as a predicate. Post-Johnson, post-Borden. You are aware of any other pending cases on this? This may be a little bit back to the absurdity point. Pending cases. There was a district court case that wasn't appealed that cited, again, responds to and disagrees with the decision based on—so current law questions. I know that there is a case where I think the Texas murder was, like, incorporated, like, in triplicate to a phone count. Nothing obvious. I don't think there's anything directly on point, at least that I'm aware of. If we were to say—and I know you've made a strong argument against it. There was—the last three years, there just hasn't been jurisdiction. District court missed it. We missed it. Supreme Court. Taylor isn't applicable. If we were to say that, two questions. Factually, what happens? Where is your client and what would happen? And legally, where would that be most wrong? Would you be saying—would you be arguing that Clay and Weiss are incorrect legally or that you win under Clay and Weiss? I think that, to answer the second question first, it's a mistake to say Weiss and Clay without Taylor. Taylor sets the parameters for what they could do. I understand that, Your Honor. And so I don't think you can get around Taylor. I really don't. But if you did, all of the above. It's not jurisdictional. It's not textual. The gatekeeping requirement doesn't require this. Do you win under Clay and Weiss as—with disregarding Taylor? Do you win anyway? Well, they cite Taylor. They say this is consistent with Taylor because—you know, so it's hard to imagine what it is. If you take the dicta from Clay or you take what I might call the penumbra of Clay, the Fifth Circuit absolutely does not like these 2255s, so we're not going to let anybody out of prison. Then if—the penumbras I lose under, but nobody can win under that. That's not the law either. Congress didn't want people in prison under unlawful sentences that were not validly authorized by Congress. This is exactly the situation that they authorized, the limited situation where there is a new constitutional rule. Without that rule, I lose. But do you win the district court had jurisdiction because the landscape shows that you've met your burden of showing it was likely the residual clause? I do, Your Honor, and more than likely. I think it's error. It is borderline scandalous libel to say the district court was applying the elements clause here because it's in black and white in the district court, in Fifth Circuit opinions. It is an insult to the district judge. It's—the case here is even stronger than it was in Lawrence-Taylor, what the Fifth Circuit precedent was. So, yes, we win. The fact that you're looking at the law at all recognizes that this isn't purely a fact-finding mission. We do not ask the district judge to take the stand. We do not get to subpoena the law clerks. We do not get to put the district judge under an MRI and say, what were you thinking that day? It's not a mens rea or like an ineffective assistance of counsel, judicial misconduct claim. The law is what we're looking at. If we can look at the law at all, we assume that the judge is applying the law as it existed at the time. Let me ask. We've got plenty of time. Just on the fact question, if you were to lose, if your client is out, can you just mentally calculate, would he be arrested and reincarcerated for how much time? Is that the circumstance? That's the circumstance. He's out. He's out, and he's been out. He's completed his term of supervised release by all appearances. He's done with this second prosecution for the same conduct. And my last question, because I'm being indulged, is I asked opposing counsel whether there's a law of the case, this facet to this, but that's a tricky issue, I think. No? You think the Supreme Court had to find jurisdiction to have done what it did, remanding for a board and inquiry? There's a law of the case component because it's not jurisdictional. So if we say that there is a silent, truly jurisdictional requirement that complies with the Supreme Court's clear statement requirement, a non-statutory clear statement in statute that truly makes this jurisdictional, there is still kind of a law of the case problem. I've talked to some of my civil friends about this, and I appreciate the indulgence for time, but it's a difficult question. What happens if an element of a counterclaim is the plaintiff's citizenship, and so the defendant has relied on that fact in all of its briefing for six years, and the case comes back, and now the plaintiff is definitely going to win on appeal, and the defendant says, no, actually, the plaintiff was somewhere else? I mean, the civil guys say, sure, they were remanded for fact-finding, and we didn't have jurisdiction, it's fine. But there's something that's very wrong about that. The fact that the government doesn't defend the jurisdictional nature of this inquiry, whether it's statutory or not, says to me that, yes, there's a law of the case component to it. That's, I think, my best answer. All right. So I'll ask you the same question I asked Ms. Mitchell. So given this case and the posture that it's in today, we issue an opinion tomorrow. What should it say? The opinion should say, if you're worried about the N word, my client would be satisfied with an unpublished opinion that said affirmed. Right? I mean, it just needs to say affirmed. Well, tell us a little bit more. Two or three sentences explaining why affirmed. If you're going to write more about this, you would say, no one can seriously contend that a sentencing court in 2007 would have applied the Armed Career Criminal Act's elements clause to any piece of the Texas murder statute. All three of them were violent under the residual clause, no question. None of them were violent under the elements clause, no question, under 2007 law. So that satisfies the gatekeeping standard, be it jurisdictional or not. Moving to the merits or prejudice, depending upon whether the error is the original application of Johnson or the affirmance of the sentence. I don't know. That's complicated. Moving to current law, this is plainly indivisible, as the court of criminal appeals has held over and over again, and at most, it required a mental state of recklessness. At most. And that is insufficient to satisfy the elements clause. So that's how we would have you write the opinion, to say, yes, the gatekeeping standard is satisfied, whether it's jurisdictional or not, because of 2007 law. And under current law, it is indivisible, and it does not have the use of physical force as an element, as the Supreme Court and this Court have defined it. All right.  Thank you so much, Ron. Ms. Mitchell? Let's give Ms. Mitchell six minutes. A portion of my argument that I didn't get to initially actually addresses two things that Mr. Wright said. The first of those is his argument that Taylor is actually the decision that controls. Taylor didn't decide for sure, one way or the other, what the standard was going to be for the defendant's or the prisoner's burden in a successive motion. That was decided in Lease and Clay, which is why that's what the Court asked us to look at and to brief. And other panels of this Court, I believe Judge Higginson mentioned there might be a published case. I'm not aware of that either. You're not? Okay. But I found at least three unpublished cases that have rejected that exact argument. And two of them are cited in the government supplemental briefing, and that's Hernandez and Medina. And there was another one that was decided in mid-February, and that's Lindsay. Why do we write so many unpublished opinions? I don't know. Maybe because there are a lot of these cases right now. Going back to the issue of whether Vargas Duran and Calderon Pena would have dictated a particular result on Texas murder, the Court has asked other panels that have also rejected that exact argument. And they've done it in evaluating predicates that are more closely related to the ones that were actually decided in those earlier cases. So Medina, for instance, Medina was challenging his aggravated assault conviction. That's a published opinion? No, Medina is unpublished, and it is cited in our supplemental briefing. Do you have any that have rejected Vargas that are published? No, I don't. Not in this context, no. So Medina is challenging his aggravated assault with a deadly weapon predicate. And the panel in that case said, at best, Vargas Duran, which dealt with intoxication assaults, and Villegas Hernandez, which was felony assault, and Fierro Reina, which was ag-assault to a police officer, the best that those get you is you need to look more specifically at the predicate. So in Medina, he's challenging another assaultive-type offense, and the court has said that's not enough. And here, we're at a completely different offense, murder, that it's still... it's not enough. Mr Vickers can't meet his burden based on those cases. There was nothing in the law that said Texas murders only residual cause offense. There's nothing from this court that applied that line of reasoning to a conviction that resulted in death until 2015. So the idea that that line of cases in 2007 would have dictated a particular result on murder doesn't make sense. And here, what we're looking at is, has he met his burden by preponderance of the evidence to show that the district court would have relied on the residual clause only in deciding whether or not murder was a violent felony? And in this particular case, I don't think the district court would have... wouldn't have had to wrestle with divisibility and whether all three subsections meet the right criteria because the categorical approach cases at that time were Taylor, Shepard, Richardson, and the court would have looked at the subdivision he was actually convicted under. And again, the idea that murder, especially intentional murder, doesn't qualify as a violent felony is really absurd, and it's also contrary to congressional intent. Did I ask you the same question I asked Tim? Are you... I mean, murder as a predicate, sadly, is a pretty common one. Is there... are you aware of any case presently asking any circuit, especially ours, to assess murder as a valid predicate post-Johnson-Borden? Is it pending? Post-Johnson or... Post-Johnson slash Borden. No, I'm not aware of any. But your answer would be, at that point, preserved with just that straight direct appeal context, at that point you would have to be arguing divisibility. Yes. That's going to come soon. Perhaps. I'm not aware of anything in the pipeline, at least from our district, that is going to bring murder up, you know, on direct appeal anytime soon. But yes, in that context, that would be the argument that the government would have to make. And if the conviction were, you know... In the earlier decision, we were able to make a distinction based on when Mr. Vickers was convicted. As far as, like, recklessness and then... or felony murder not having any mens rea at all. That doesn't matter anymore. But, yeah, on direct appeal, that would be our issue here. There is a higher burden on Mr. Vickers because this is a successive 2255. He has to meet that... what this court has set as jurisdictional prerequisite, and he hasn't done that here. Are there no more questions? I appreciate your time. Thank you. Thank you, Ms. Mitchell. Your case is under submission, and the court is in recess.